UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANDREW PERRY, | Case No. 2:21-cv-00480-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Andrew Perry ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Act. ECF No. 22. For the reasons stated below, the Commissioner's decision is affirmed.

### I.   BACKGROUND

On April 30, 2015 Plaintiff filed an application for DIB and SSI alleging an onset date of March 11, 2015. Administrative Record ("AR") 271-283. The Commissioner denied Plaintiff's claims by initial determination on October 7, 2015 (AR 188-196), and upon reconsideration on February 16, 2016. AR 205-206. On March 8, 2016, Administrative Law Judge ("ALJ") Cynthia R. Hoover held a hearing at which Plaintiff appeared and testified. AR 94-126. The ALJ also heard testimony of vocational expert ("VE") Robin General. AR 114-122. The ALJ ultimately found that Plaintiff was not disabled, issuing her determination on November 24, 2017. AR 16-38. When the Appeals Counsel denied Plaintiff's request for review on May 2, 2018, AR 1-7, the ALJ's decision became the final order of the Commissioner. 42 U.S.C. § 405(g). On July 22, 2018, Plaintiff appealed the decision to the United States District Court for the District of Nevada. The District Court remanded the case for further fact finding on January 8, 2018 pursuant to a stipulation by the parties. AR 670-678. ALJ Hoover conducted a second hearing on September 24, 2020 where the ALJ heard additional VE testimony from Jacklyn Benson-Dehan. AR 602-617. ALJ Hoover again

found Plaintiff not disabled for the relevant period, issuing an unfavorable decision on October 30, 2020. When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. AR 570-576. This civil action followed.

## II. STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision when an error is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

A. **Plaintiff's Separation of Powers Argument**.

Independent of his challenge to the ALJ's unfavorable decision, Plaintiff argues that he is entitled to remand as a matter of law because the conditions of Commissioner Saul's appointment and tenure violated separation of powers. ECF No. 22 at 5. Plaintiff bases his argument on the Supreme Court's decisions in *Seila Law LLC v. CFPB* and *Collins v. Yellin*, which held that the for-

2

cause restriction on the President's executive power to remove the single Director of the Consumer Financial Protection Bureau ("CFPB") and the Federal Housing Finance Agency ("FHFA"), respectively, violated the constitutional separation of powers. *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020); *Collins v. Yellin*, 141 S.Ct. 1761 (2021). Plaintiff argues that *Seila Law* and *Collins* and their line of cases demonstrate that the limitation on the President's power to remove the Commissioner of the Social Security Administration ("SSA"), articulated in 42 U.S.C. § 902(a)(3), is unconstitutional. Plaintiff argues that Commissioner Saul, the Commissioner heading the SSA at the time Plaintiff's hearing was held, was not properly in office because he led the SSA as a single-member head protected by a six-year tenure exceeding the President's term of office. Plaintiff concludes that, therefore, the ALJ who heard and decided Plaintiff's case was without constitutional authority to do so. ECF No. 22 at 7.

In *Seila Law,* the United States Supreme Court considered the constitutionality of a statutory limitation on the President's power to remove the head of the CFPB. Under the facts of the case, the Supreme Court held the limitation was an unconstitutional violation of the separation of powers. *Seila Law*, 140 S.Ct. at 2207. In the course of coming to this conclusion, the *Seila Law* Court took issue with Congress investing unilateral decision-making power in the single Director of the CFPB, insulating the Director with a for-cause removal restriction, and delineating a five-year tenure in office. *Id.* at 2204. The Court explained:

> Because the CFPB is headed by a single Director with a five-year term, some Presidents may not have any opportunity to shape its leadership and thereby influence its activities. … To make matters worse, the agency's single-Director structure means the President will not have the opportunity to appoint any other leaders—such as a chair or fellow members of a Commission or Board—who can serve as a check on the Director's authority and help bring the agency in line with the President's preferred policies.

*Id.* Here, Plaintiff argues that, like the head of the CFPB, Commissioner Saul was serving without constitutional authority.[1] ECF No. 22 at 7. Plaintiff contends that the Commissioner was impermissibly in office and therefore exercised impermissible authority over Plaintiff's application for benefits because it is the Commissioner who appointed the ALJ that denied his claim. *Id*

---

[1] In further support of this argument, Plaintiff references the Office of Legal Counsel's nonbinding determination that "the statutory restriction on removing the Commissioner [of the SSA] is unconstitutional." ECF No. 22 at 6-7, *quoting Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ___ (July 8, 2021).

In *Collins v. Yellen*, the Supreme Court similarly found the structure of the FHFA unconstitutional for "concentrating power in a unilateral actor insulated from Presidential control." *Collins*, 141 S.Ct. at 1784. The *Collins* decision, which the Ninth Circuit considers "controlling with respect to the remedy for any unconstitutionality in the removal provisions,"[2] emphasized that the unconstitutional leadership structure of the FHFA did not automatically render the agency's decisions void. *Id.* at 1787. The Court noted that, while the *removal* provision at issue was unconstitutional, the *appointment* of each director to the FHFA was sound, and thus there was "no reason to regard any of the actions taken by the FHFA … as void." *Id.* Instead, the *Collins* Court implied that a plaintiff seeking retrospective relief must make a showing of "compensable harm," and remanded the case to resolve whether such harm was present. *Id.* at 1788-89.

Defendant raises two primary arguments, rooted in the Court's discussion in *Collins*, that Plaintiff's separation of powers argument does not entitle him to relief. First, Defendant argues that because ALJ Hoover's appointment was ratified in July 2018 by then-Acting Commissioner of Social Security Berryhill, who was not subject to an impermissible removal restriction, any harm stemming from the U.S.C. § 902(a)(3)'s removal provision is tenuous at best.[3] ECF No. 26 at 5. Second, Defendant argues that regardless of the ratification, Plaintiff cannot show he suffered harm as a result of the unconstitutional removal provision. *Id.* at 10.

Plaintiff replies that "[b]ecause of the intervening authority of the unconstitutional office of the Commissioner, the ALJ in this case was not subject to sufficient accountability." ECF No. 27 at 4. Plaintiff cites a District of Colorado opinion for the proposition that just because "Ms. Berryhill's position was temporary … does not mean she could be removed at will." *Id.*, *citing Tafoya v. Kijakazi*, 551 F.Supp.3d 1054, 1061 (D. Colo.2021). Plaintiff suggests that President Biden's delay in removing Commissioner Saul until after the Office of Legal Counsel issued its opinion leads to the conclusion that Section 902(a)(3) prevented the President from removing the Commissioner when he otherwise would have acted. *Id.* at 6. Plaintiff argues that Commissioner Saul was terminated in part for reducing due process in the Social Security Disability Insurance context, and

---

[2] *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021).
[3] Plaintiff concedes that the appointment of ALJ Hoover was proper. ECF No. 27 at 4.

that "there is a strong possibility that Perry was among those who were wrongfully deprived of their due process rights." *Id.* at 7-8.

Plaintiff fails to make a showing of actual harm as anticipated by Supreme Court and Ninth Circuit case law. *See, e.g.*, *Collins*, 141 S.Ct. at 1787-89; *Decker Coal*, 8 F.4th at 1138 ("there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Then-Acting Commissioner Berryhill ratified ALJ Hoover's appointment in July 2018, before the ALJ adjudicated Plaintiff's claim in 2020. ECF No. 27 at 4. Plaintiff is unable to establish a causal connection between the unconstitutionality of Commissioner Saul's tenure under 42 U.S.C. §902(a)(3) and the adjudication of his claim by a properly appointed administrative law judge. *Decker Coal*, 8 F.4th at 1137 (refusing to vacate the adjudication of an ALJ whose appointment was ratified before the decision at issue "absent a showing of harm."); *see also Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756 RAJ, 2021 WL 5514434, at *7 (W.D. Wash. Nov. 24, 2021) ("Plaintiff has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying her benefits.").

The argument that President Biden would have removed Commissioner Saul for hypothetical due process violations immediately upon taking office but for Section 902(a)(3) is highly speculative and beside the point. Even if Plaintiff could clearly establish that the President was prevented from exercising his removal power by Section 902(a)(3), which he cannot, Plaintiff presents no evidence that his rights were violated by any specific action taken by the Commissioner or the ALJ at any point in the process. Plaintiff argues that Defendant is exaggerating the harm threshold required for retrospective relief. But this argument is meritless because Plaintiff cannot show anything more than the remote and abstract possibility of harm. As was the case in *Decker Coal*, there is no evidence that "the existence of [the removal restriction] alone tainted the ALJ's decision." *Id.* For the reasons stated above, the Court declines to reverse or remand the prior rulings in this case and award Plaintiff retroactive relief.[4]

---

[4] The Court discusses the constitutional issue in terms of *Collins'* principle of "compensable harm," but notes that Plaintiff also cannot establish traceability and redressability sufficient to give him standing to bring his separation

Having determined that Plaintiff's separation of powers argument does not entitle him to reversal or remand, the Court proceeds to consider Plaintiff's substantive challenges to the ALJ's denial of disability benefits.

**B.** **Establishing Disability Under the Act**.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*. The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor

---

of powers claim. Because neither party addressed standing in their briefs, the Court confines its discussion to the arguments presented.

equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.
*Id*. at 1098-99 (internal alterations omitted).

### C.    **Procedural history and summary of ALJ findings**.

On voluntary remand of the parties, the District Court instructed the ALJ to obtain further testimony from a vocational expert ("VE") on the "effect of the assessed limitations on the claimant's occupational base" and whether "claimant has acquired any skills that are transferable" in light of the identified occupational base. AR 580. The ALJ held a second hearing obtaining testimony from a new VE. Notably, the ALJ's step five determination based off of the VE's testimony identified three occupations to which Plaintiff's skills transferred in contrast to the two occupations identified in the ALJ's prior decision. As the ALJ did not incorporate prior findings into his October 30, 2020 decision, which constitutes the final decision of the Commissioner, the Court treats the October 30, 2020 decision as the relevant opinion under review.

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2019,[5] and found that Plaintiff did not engage in substantial gainful activity from the alleged onset date. AR 583. At step two, the ALJ found that Plaintiff suffered from spine disorder, obesity, and anxiety disorder. *Id.* The ALJ also found evidence that Plaintiff has suffered

---

[5]    "Courts have excused inconsistent statements by ALJs "as mere scrivener's errors" if the intent of the ALJ is apparent from the record. *Mckenzie v. Kilolo Kijakazi*, Case No. 1:20-CV-0327 JLT, 2021 WL 4279015, at *15 (E.D. Cal. Sept. 21, 2021)."

7

from a variety of non-severe impairments, including "right distal fibular fracture, osteoarthritis and degenerative meniscal tearing of the right knee, and affective disorder." AR 583-584. At step three, the ALJ again found that Plaintiff had no impairment or combination of impairments meeting or equaling any "listed" impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 585.

In preparation for step four, the ALJ calculated the following Residual Functional Capacity ("RFC")[6] through the date last insured to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for 6 hours and sitting for 6 hours in an 8-hour workday, occasional climbing ladders, ropes or scaffolds, stooping, kneeling, crouching, and crawling, frequent climbing ramps and stairs, unlimited balancing, and only occasional contact with the public and coworkers.

AR 585. At step four, the ALJ found Plaintiff unable to perform past relevant work. AR 591. After hearing testimony from a VE, the ALJ made the step five determination that Plaintiff had transferrable work skills allowing him to perform, for example, the jobs of File Clerk, Return to Factory Clerk, and Laundry Clerk. AR 591. Ultimately the ALJ concluded Plaintiff was not disabled. AR 592.

**D.    Whether the ALJ's RFC finding was supported by substantial evidence.**

The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact as embodied in the RFC are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Uklov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the

---
[6] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Burch*, 400 F.3d at 679. Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

        1.      <u>The ALJ's summary of the relevant medical evidence</u>.

In his Motion, Plaintiff limits his challenge of the ALJ's medical findings to the ALJ's assessment of Plaintiff's knee and spine impairments. ECF No. 9-13. Thus, although the record contains significant discussion of Plaintiff's alleged mental health impairments and additional physical impairments such as an ankle injury, migraines, and obesity, *see* AR 584-590, the Court focuses its summary of the medical evidence on Plaintiff's knee and spine conditions.

            a.      *Knee impairment*

The ALJ assessed Plaintiff's degenerative meniscal tearing of the right knee as non-severe; in other words, as having "no more than a minimal effect on his ability to work." AR 584. The ALJ stated that he considered Plaintiff's non-severe impairments such as Plaintiff's knee impairment in determining the RFC calculation and found that "[t]he evidence does not support a finding of any additional functional limitations other than those included in [the RFC]." AR 583. The ALJ noted Plaintiff's complaints of right knee dysfunction dating from 2016. The ALJ reviewed a physical examination revealing "tenderness in the medial joint compartment of the right knee with intact range of motion with some crepitus and positive McMurray's test and x-rays of the right knee showed degenerative tearing of the medial and lateral menisci and moderate degenerative changes in all three joint compartments." AR 585. In addition, the ALJ reviewed an MRI scan from February 25, 2018 that demonstrated "tearing of the posterior horn of the medial meniscus, degenerative signal within the lateral meniscus without clear discrete tear, medical compartment predominant osteoarthritis, bone marrow edema, and small knee effusion." *Id.* Ultimately, however, the ALJ found the impairment non-severe because "although the claimant agreed to have injections in his right knee, there is scant indication that the claimant received treatment for this impairment." AR 584.

### b. *Spine impairment*

In response to Plaintiff's complaints of significant lower back discomfort, the ALJ considered two MRIs of Plaintiff's lumbar spine, one taken November of 2014 and one from March 2018. AR 588. The 2014 scan revealed

> mild inferior rotary dextrascoliosis [sic] of the lumbosacral spine with degenerative changes, L1-2 intervertebral disc protrusion with annular tear, L2-3 intervertebral disc protrusion and annular tear with severe spinal stenosis and mild left with moderate right neural foraminal narrowing, L3-4 intervertebral disc bulge with mild spinal stenosis and mild bilateral neural foraminal narrowing, L4-5 intervertebral disc protrusion with mild spinal stenosis and mild bilateral neural foraminal narrowing, L5-S1 intervertebral disc bulge with mild bilateral neural foraminal narrowing, and multilevel facet arthropathy.

*Id.* The 2018 scan revealed "significant disc pathology at L2-3 with interval development of extruded disc material or fibrotic tissue." *Id.* However, the ALJ noted that despite these findings, "physical examinations generally revealed normal findings, including no tenderness on palpitation or muscle spasm in the lumbosacral spine, full range of motion of the extremities, and negative straight leg raising test bilaterally in both the sitting and supine positions." *Id.* In addition, the ALJ noted that Plaintiff in 2018 stopped taking his pain medication. *Id.* "Moreover, the claimant's doctor … recommended that conservative treatment be maximized and stated that the claimant would benefit from some conditioning, but there is scant indication in the record that the claimant participated in other conservative treatment modalities, such as physical therapy." *Id.*

Based on the above findings, the ALJ included a limitation in the RFC to "lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for six hours and sitting for six hours in an eight-hour workday, occasionally climbing ladders, ropes, or scaffolds, stooping, kneeling, crouching, and crawling, frequently climbing ramps and stairs, and unlimited balancing." AR 588-589. The ALJ also considered Plaintiff's obesity and weight, "including its impact on his ability to ambulate and on his other body systems" in calculating the RFC. AR 589.

### 2. The parties' arguments.

Plaintiff claims that "the ALJ erred in evaluating [sic] raw medical data." ECF No. 22 at 9. Plaintiff argues that because "the state agency last evaluated the record in January 2016, and there was no medical expert at the 2017 hearing" that took place after remand, no doctor evaluated and

rendered an opinion on Plaintiff's ability to work post-remand. *Id.* Plaintiff asserts that he submitted "new evidence" after the ALJ's first denial in 2017 demonstrating deterioration of Plaintiff's condition. *Id.* Because no medical expert had an opportunity to review the new evidence, Plaintiff argues that the ALJ's findings in her 2020 decision are unsupported by the medical record. *Id.* Plaintiff identifies the new evidence regarding his knee as an MRI taken in February 2018 revealing "unchanged grade 3 level cartilage loss of the medical compartment with associated with bone marrow edema" and "horizontal and vertical tearing of the posterior horn of the medical meniscus, worsened since the prior study." *Id.* at 10. Plaintiff compares his case to *Stone v Heckler*, which holds that where a claimant's condition was deteriorating, "the most recent medical report is the most probative." *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). Given the comparatively recent medical imaging, Plaintiff argues, "[t]he state agency opinions are stale and not reflective of Perry's condition." *Id.* at 11. Plaintiff also relies on *Hayes v. Astrue*, 270 F. App'x 502, 504 (9th Cir. 2008), in which the Court found that "the ALJ's heavy reliance on an examining physician's opinion was not supported by substantial evidence where the physician's opinion did not consider readily-available results of the claimant's nerve conduction study." ECF No. 22 at 12.

Plaintiff also points to a comparatively recent MRI of his lumbar spine from 2018 as new evidence that state agency doctors did not review. *Id.* Plaintiff argues that the 2018 MRI demonstrates his spine condition worsened, and that it was legal error for the ALJ to render a finding as to Plaintiff's spine condition because the state agency doctors did not review the updated evidence. *Id.* In relevant part, Plaintiff quotes the 2018 MRI findings to support his claim of spinal deterioration:

> There is narrowing and a severe 7mm circumferential disc bulge. There is a band of tissue 13mm in length and 4mm in width situated in the anterior spinal canal slightly to the left of midline proceeding in a caudal direction. This is new since the prior and likely represents extruded disc material, fibrosis, or combination. It completely obliterates the left lateral recess and moderately narrows the spinal canal. The facets show mild hypertrophy. The neural foramina show mild narrowing. The spinal canal is moderately narrowed.

AR 906-907. Plaintiff argues that "the increase in objective findings are obvious because the disc bulge is now 7mm compared to 5mm; there is now a band of tissue 13mm in length and 4mm in width on the spinal canal; and because the treating orthopedic actually stated 'this is new since the

prior [MRI]." ECF No. 22 at 12. Plaintiff invokes the ALJ's independent "duty to fully and fairly develop the record," *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1983), and argues that failing to consult a medical expert on the 2018 MRI renders the ALJ's finding that Plaintiff is not disabled unsupported by substantial evidence. *Id.*

In response, Defendant argues that the ALJ was entitled to rely on the uncontradicted medical opinions of the state agency doctors who testified at the initial hearing and at the reconsideration level in light of the fact that the record "contained evidence of normal physical examination findings and conservative treatment." ECF No. 26 at 17. Defendant argues that it is not legal error to continue to rely on the opinions of state agency doctors where subsequent evidence entered the record that the doctors did not review. Defendant quotes Ninth Circuit caselaw noting that there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Meadows v. Saul*, 807 Fed.Appx. 643, 647 (9th Cir. 2020). Defendant also identifies cases at the district level contradicting Plaintiff's argument that the availability of new evidence, including MRIs, triggers a renewed obligation to consult medical experts where the record already contains such testimony. *See, e.g.*, *Zialcita v. Comm'r of Soc. Sec.*, Case No. 1:20-CV-000530SAB, 2021 WL 63347, at *14 (E.D. Cal. Jan. 7, 2021); *Harrison v. Saul*, Case No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021); *Digiacomo v. Saul*, Case No. 1:19-CV-00494-BAM, 2020 WL 6318207, at *8 (E.D. Cal. Oct. 28, 2020).

Finally, in response to Plaintiff's argument that the ALJ had a duty to develop the record in light of the MRIs, Defendant argues that this duty is only triggered "when the ALJ finds that the evidence is ambiguous or if the record is so inadequate that it prevents her from evaluating the evidence." ECF No. 26, citing *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). According to Defendant, the new evidence Plaintiff points to is consistent with the record as a whole, which contains sufficient information to support the ALJ's RFC calculation. *Id.* Defendant argues that the record as a whole through 2019 demonstrated "unremarkable clinical findings or no clinical findings" with respect to Plaintiff's knee injuries. ECF No. 26 at 19. Defendant addresses the 2018 MRI of Plaintiff's knee but notes that "[t]reatment notes from 2018 and 2019 mention knee pain,

but contain no clinical findings regarding Plaintiff's right knee." *Id.* Defendant points out that Plaintiff's choice not to pursue knee injections despite agreeing to the treatment corroborate the ALJ's conclusion that the impairment was non-severe. *Id.*

With respect to Plaintiff's spinal condition, Defendant argues that, although the record contains MRIs showing abnormalities, including the 2018 MRI Plaintiff references, "physical examinations generally revealed normal findings, including no tenderness on palpation or muscle spasm in the lumbosacral spine, full range of motion of the extremities, and negative straight leg raising test (no pain) bilaterally in both the sitting and supine positions." *Id.* Defendant cites examinations on six different dates since 2017, all of which revealed "normal curvature" of the spine and "no tenderness." *Id.* at 19-20. Defendant also notes that Plaintiff "reported good control with pain medication and generally denied adverse side effects from his medications" and stopped taking his pain medications in 2018. *Id.*

Defendant argues that these facts, and the fact that Plaintiff participated in no conservative treatments such as physical therapy, all suggest Plaintiff could perform a light range of work. *Id.* As such, Defendant argues, regardless of subsequent evidence of changes to Plaintiff's knee and spine conditions as captured in the new MRIs, Plaintiff has not established a corresponding worsening in *function*. *Id.* at 22. According to Defendant, because the actual clinical findings with respect to Plaintiff's knee and spine conditions were unremarkable or entirely consistent with prior examinations reviewed by the state agency doctors, the ALJ was not required to obtain a second round of testimony from medical experts. *Id.*

3. <u>Analysis</u>.

The RFC finding was supported by substantial evidence. The Ninth Circuit has repeatedly held that under Social Security Regulations "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006 (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)); *see also Bufkin v. Saul*, 836 Fed.Appx. 578, 579 (9th Cir. 2021) (unpublished) ("the ALJ properly considered all of the various types of evidence in the medical record, including objective evidence such as x-rays, [claimant's] treatment history, and clinical findings, and properly translated and incorporated this evidence into an RFC finding").

Notably, the ALJ in *Bufkin* "did not rely on her 'lay interpretation' of medical evidence" but "simply summarized the medical evidence from [treating doctors]." *Bufkin*, 836 Fed.Appx. at 579. Plaintiff accuses the ALJ of interpreting raw medical data when she reviewed post-remand knee and spine MRIs without consulting a medical expert, but Plaintiff points to no *interpretation* of the MRIs in the ALJ's decision, which simply summarizes the objective medical evidence in question. AR 584, 588. All conclusions the ALJ rendered on Plaintiff's back and spine conditions were based on clinical findings and Plaintiff's testimony.

The ALJ's finding that Plaintiff's knee impairment was "non-severe" was based on Plaintiff's failure to pursue treatment for his knee injury. AR 584 ("although the claimant agreed to have injections in his right knee, there is scant indication that the claimant received treatment for this impairment"). In assessing Plaintiff's spine disorder, the ALJ cited physical examinations revealing "normal findings" and Plaintiff's reports of "good control with pain medication," and the fact that Plaintiff neglected to pursue any physical therapy or other forms of conservative treatment. AR 588. The ALJ's engagement with the MRIs Plaintiff identifies never goes beyond a summary of the objective MRI findings, which she considered in combination with the various types of evidence in the record and translated into the RFC. Thus, Plaintiff's reliance on *Hayes v. Astrue*, where the ALJ entirely neglected to mention the new evidence or consider it in calculating the RFC, is misplaced. *Hayes*, 270 Fed.Appx. at 504.

*Stone v. Heckler* similarly does not lend support to Plaintiff's case. In *Stone*, the court found a lack of substantial evidence on the basis that the ALJ relied on "stale" medical reports. *Stone*, 761 F.2d at 532. In Stone's case, however, the new medical report the ALJ failed to review was a finding from Stone's doctor that "it would be impossible for Mr. Stone to be gainfully employed in a position requiring the use of his lower extremities." *Id*. There are no such clinical findings in this case either as to Plaintiff's knee or spine. Although Plaintiff provides various new MRIs showing deterioration, Defendant is correct that there is nothing in the record to support a conclusion that Plaintiff's ability to function had worsened. Plaintiff complains that "[t]here is no doctor in the record that rendered an opinion on Perry's ability to work after the state agency physician last reviewed the record in January 2016." ECF No. 22 at 9. But Social Security Regulations place the burden on Plaintiff to

establish that he is disabled. Plaintiff's argument, therefore, that the ALJ was obligated to obtain new medical expert testimony to ensure the ALJ was working from only the most up to date record is contrary to the law. Plaintiff bears the burden of establishing disability; as such, the ALJ's obligation to develop the record is triggered only when the evidence is ambiguous or the record is so inadequate that the evidence cannot be effectively evaluated. *Mayes*, 276 F.3d at 459-460.

Here, the ALJ considered all of the medical and non-medical evidence of Plaintiff's back and spine injuries, noted Plaintiff's failure to pursue prescribed treatment methods, and ultimately found Plaintiff was limited to "light work" with additional limitations to various forms of activity and movement. AR 587. Nothing in the record, including Plaintiff's recent scans, is obviously inconsistent with the RFC, the calculation of which is the exclusive domain of the ALJ, and must be respected under the deferential substantial evidence standard. *See Biestek*, 139 S.Ct. at 1156. As the court found in *Bufkin*, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin*, 836 Fed.Appx. at 579.

### E. Whether the ALJ's step five finding was supported by substantial evidence.

#### 1. The parties' arguments.

Plaintiff argues that the ALJ erred at Step five when finding Plaintiff had transferrable skills to other occupations. ECF No. 22 at 13. The Social Security Regulations require the ALJ to identify a "significant range of semi-skilled or skilled work that is within the individual's functional capacity" in order to conclude that Plaintiff has transferrable skills at Step Five of the process. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.00(c). This Regulation is interpreted to require identification of a significant number of occupations. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006). Plaintiff argues that the ALJ's identification of only three occupations—file clerk II, return to factory clerk, and laundry clerk—did not constitute a significant range of occupations. ECF No. 22 at 13. Therefore, Plaintiff argues, the ALJ erred in finding that Plaintiff was not disabled. *Id.* Plaintiff cites *Maxwell v. Saul*, in which the court held that two occupations does not constitute a significant range of work, while emphasizing that the court was not deciding the exact number of occupations qualifying as "significant." *Maxwell v. Saul*, 971 F.3d 1128, 1131 (9th Cir. 2020). Plaintiff also cites *Patricia S. v. Saul*, a District of Oregon case where the Court found three

occupations insufficient to establish a significant range. *Patricia S. v. Saul*, Case No. 6:19-CV-1437-SI, 2021 WL 1187051, at *5 (D. Or. Mar. 29, 2021). On this basis, Plaintiff argues that he is disabled as a matter of law. ECF No. 22 at 15.

Defendant reiterates that the Ninth Circuit has not created a bright line rule for the number of occupations constituting a significant range. ECF No. 26 at 20. Defendant cites to *Caldwell-Grant v. Berryhill*, 691 Fed.Appx. 353 (9th Cir. 2017) (unpublished), a Ninth Circuit case in which the court found the three occupations the ALJ identified qualified as a significant range of occupations. ECF No. 26 at 23-24. Plaintiff replies that *Caldwell-Grant* pre-dated *Maxwell*, which explicitly held that two occupations was not a significant range and, in a citation, noted that the Merriam Webster Dictionary defines "significant" as "a noticeably or measurably large amount." ECF No. 27 at 13, citing *Maxwell*, 971 F.3d at 1131. Defendant also cites another pre-*Maxwell* case from the District of Oregon that found three occupations is significant. ECF No. 26 at 24, citing *Marie C. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:19-CV-00055-HZ, 2020 WL 1656493, at *9 n. (D. Or. Apr. 3, 2020). Plaintiff contends that the more recent decision in *Patricia S.*, also out of the District of Oregon, is more persuasive. ECF No. 27 at 13.

Defendant finally points to the SSA's internal policy as articulated in the Program Operations Manual System ("POMS"), which informs the ALJs that they "generally must cite at least three occupations when documenting capacity for other types of work." ECF No. 26 at 24, citing SSA POMS DI 25015.017(I). Defendant notes that 20 C.F.R. § 404.1568(a)-(c) recognizes generally that "the higher the skill level, the more the potential for transferring skills increases." Social Security Ruling (SSR) 82-41, *available at* 1982 WL 31389, at *4. The VE's role is to "ascertain whether and how these skills are transferable." *Id.*

2. <u>The VE identified a "substantial range" of occupations</u>.

The Court declines to find that three occupations cannot constitute a significant range and consequently to hold that Plaintiff is disabled as a matter of law. The Ninth Circuit was clear in *Maxwell* that it was not establishing a bright line rule for the number of different occupations that an ALJ must identify. *Maxwell* made no conclusion as to whether three occupations constitute a significant number. The case merely notes in a parenthetical citation that the word "significant" in

isolation means "a measurably large number," with no further discussion of what "measurably large" means in the Social Security context. In the years before *Maxwell*, it is common practice for ALJs to list three representative occupations, as was the internal policy of the agency. Social Security Ruling (SSR) 82-41, *available at* 1982 WL 31389, at *4.

Post-*Maxwell*, courts also affirm ALJ decisions finding claimants not disabled where they possessed transferrable skills to three occupations. *See, e.g.*, *Est. of Beverly B. v. Comm'r*, *Soc. Sec. Admin.*, Case No. 3:19-CV-01351-MC, 2021 WL 538923, at *3 (D. Or. Feb. 15, 2021); *Layton S. v. Saul*, Case No. 20-CV-0642-MDD, 2021 WL 662265, at *2 (S.D. Cal. Feb. 19, 2021). *Kasey v. Commissioner of Social Security*, Case No. C-20-6153 RAJ, 2022 WL 102048, at *5 (W.D. Wash. Jan. 11, 2022) (finding that *Maxwell* does not requiring reversal where the ALJ listed three "sample occupations").

The Court declines to follow the example in *Patricia S.*, which found three occupations insignificant warranting reversal as a matter of law. *Patricia S.*, 2021 WL 1187051, at *5. The Ninth Circuit in *Maxwell* explicitly declined to adopt a specific number of occupations that must be identified in order to constitute a significant range, and only three years earlier affirmed that "substantial evidence supports the ALJ's finding that [claimant's] skills were transferable to a significant range of semi-skilled work that she could perform" where the ALJ identified three occupations. *Caldwell-Grant*, 691 Fed.Appx. at 353. Given that there is nothing in *Maxwell* that clearly indicates the intention to require the identification of more than three occupations, the Court does not find such a requirement in this case.

The Court finds that the ALJ's finding that Plaintiff is not disabled was supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

## IV.  ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 22) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 25) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment accordingly.

DATED THIS 29th day of March, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE